```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
RACHEL CROFT,                            :
                                         :      13 Civ. 2996 (DLC)
                    Plaintiff,           :
                                         :      OPINION AND ORDER
          -v-                            :
                                         :
GREENHOPE SERVICES FOR WOMEN, INC.;      :
CATHERINE CREECH; and NORMA "DOE,"       :
                                         :
                    Defendants.          :
                                         :
----------------------------------------X
```

APPEARANCES

For the Plaintiff:

Oren Giskan and Raymond Audain
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, NY 10004


For the Defendants:

Bert L. Slonim, Richard A. De Sevo, Thomas John Szivos
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Thaddeus John Rozanski
Kral, Clerkin, Redmond, Ryan, Perry, & Van Etten, LLP
538 Broadhollow Road
Melville, NY 11747


DENISE COTE, District Judge:

    Rachel Croft ("Croft") has brought this action, alleging both constitutional and common law tort claims, against Greenhope Services for Women, Inc. ("Greenhope") and certain of its employees. At the time of the incident that is the basis for

these claims, Croft was on parole, and her parole required that she attend and complete a residential drug treatment program at the Greenhope facility.  On October 30, 2012, a dispute arose between Croft and a Greenhope employee.  The next day, other Greenhope employees called the Parole Office, and Croft was arrested for violating her parole.  After spending approximately four weeks in jail, Croft's parole was revoked and reissued.  She pled guilty to one charge of violating her parole, and was discharged to an outpatient program.

On May 3, 2013, Croft filed this suit, alleging that Greenhope and its employees falsely accused her and caused her arrest.  She brings claims against them of false arrest under the Fourth Amendment and New York common law, retaliation under the First Amendment, and other negligence torts under New York common law.  On October 22, the defendants moved for summary judgment.  The motion was fully submitted on November 26.  For the reasons explained below, the motion is granted.

BACKGROUND

The following facts are undisputed or taken in the light most favorable to the plaintiff.  At the time of the incident that is the basis of her claims, Croft was on parole for a 2010 conviction for criminal possession of a controlled substance in the fifth degree.  Her sentence was principally thirty months of

incarceration followed by eighteen months of post-release supervision.  After serving less than one year in prison, Croft was released on parole in May 2011.  Croft violated her parole in October 2011 and was apprehended in July 2012.  Prior to her parole hearing, Croft's attorneys arranged for her to be admitted to Greenhope, a private non-profit organization located at 435 East 119th Street, Manhattan, that provides residential drug treatment for women referred by New York's Division of Parole as an alternative to incarceration.  Greenhope was chosen because Croft was pregnant and Greenhope had a mother-and-child program.

At her September 13, 2012 parole hearing, Croft pled guilty to violating her parole.  Her parole was revoked and restored with the condition that she "enter and complete a residential . . . substance abuse treatment program to be arranged by the Parole Restoration Program prior to discharge."  Croft signed a document dated September 17 stating that, as a special condition of release, she would "enter, cooperate [with,] and complete a residential treatment program."  On September 27, Croft signed a "Special Conditions of Release to Parole Supervision" document, in which she agreed to "enter and complete Project Greenhope" and "follow all [of] the conditions and rules of Project Greenhope."

On October 30, as New York City was under assault from Hurricane Sandy, Croft had a disagreement with a Greenhope employee, Catherine Creech ("Creech"), about the quality of her

3

dinner. Croft became upset and refused to eat the plate of food that she had been provided. The exact circumstances of what she did with her plate of food remain very much in dispute.

On the morning of October 31, Ines Reid ("Reid"), then Residential Director of Greenhope, reviewed video footage of the incident. She and Estelle Pierce ("Pierce"), the director of Greenhope's legal department, conferred and decided to contact the Parole Office. The Parole Office was advised that Croft had thrown a plate of food at a staff member and that Greenhope no longer wanted her in the program. The Division of Parole issued a warrant for Croft's arrest. Parole Officer Douthit, along with other officers, arrived at Greenhope and arrested Croft. Croft was discharged from Greenhope, and was transported to Riker's Island jail, where she remained from October 31 to November 27.

On November 20, a hearing was held for Croft's parole revocation. The Violation of Release Report listed three charges of parole violation:

> Charge #1: Rachel Croft violated Rule #8 of the conditions governing her release in that on 10-30-2013 at approximately 5:42 pm at 435 East 119th Street, New York she threw a plate at Catherine Creech with the intent to cause physical injury.
>
> Charge #2: Rachel Croft violated Rule #13 of the condition governing her release in that on 10-30-2013 she failed to comply with the written special conditions given to her on 09-27-2012 by Parole Officer Douthit directing that she enter and complete Project Green Hope Drug Program.

4

>Charge #3: Rachel Croft violated Rule #12 of the conditions governing her release in that she failed to enter and complete Project Green Hope Drug Program at 435 East 119th Street, New York City, contrary to the Board Mandate and Special Conditions of her release as specified in the Certificate of Release she signed on 05-09-2011.

Croft was represented at the hearing by Omar Fortune, of the Legal Aid Society.

During the hearing, the Parole Judge heard from Croft that she had not, in fact, thrown a plate at a Greenhope staff member and that Parole Officer Douthit believed that she should enter outpatient treatment and live with her fiancé, pending the birth of their child. The Parole Judge decided to solicit the opinion of Parole Officer Douthit, who was not present. Upon being contacted, Douthit acknowledged that Croft had been kicked out of Greenhope but recommended that Croft's parole be revoked and restored so that she could enter outpatient treatment. The Parole Judge accepted the recommendation and told Croft that she "can go back home." It was determined that the first and third charge would be withdrawn but not the second charge.

>Court: You're gonna have to plead guilty to being kicked out of the program or leaving the program, and I'm going to revoke and restore you back to your husband

>Croft: Thank you.

The Parole Judge advised Croft that, under this approach, she would "have a violation on [her] record."

> Court:  She's gonna plead to charge number two.  So listen to me carefully.  Charge two says Rachel Croft, Croft violated rule thirteen of her release in that on 10/31/12 she failed to comply with the written special conditions given to her on 9/27/12 by Parole Officer Dolfit directing that she enter and complete Project Green Hope.  How do you plead to that ma'am?
>
> Croft: Guilty.

The formal Parole Revocation Decision Notice states that the sustained charge was supported based on the information in the Violation of Release Report and the credible testimony of Croft's guilty plea.  The remaining charges were withdrawn, including specifically Charge #1, which pertained to the allegation regarding the plate.  Croft was released from Riker's Island a few days later.

On May 3, 2013, Croft filed the present suit against Greenhope and two of its employees, Creech and Norma Williams ("Williams"), who is listed in the case caption as "Norma Doe." At the initial conference with the Court on July 12, the defendants indicated a desire to bring an early motion for summary judgment.  Document discovery was ordered, and the parties were given an opportunity to take one deposition each, with the understanding that, should the case survive motion practice, the parties would have an opportunity to complete discovery.  The summary judgment motion was scheduled to be filed by October 18.  As it turned out, the parties took three depositions.

6

On October 1, the plaintiff gave notice of a desire to amend her complaint.  At a conference of October 8, the defendants reiterated their desire to move for summary judgment and expressed their opposition to the amendment or further delay.  A scheduling order of October 9 permitted the summary judgment motion, as well as the defendants' opposition to the motion to amend, to be filed on October 18.  The plaintiff was reminded as well in that Order of her right to oppose summary judgment with a showing under Rule 56(d), Fed.R.Civ.P., that she needed additional discovery.  On October 10, the parties stipulated the dismissal of Creech and Williams as defendants.

DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth

7

specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings.  Fed.R.Civ.P. 56(c); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).  Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Id.

The Amended Complaint brings five claims against the defendants: (1) retaliatory conduct in violation of the First Amendment against Reid and Pierce; (2) false arrest in violation of the Fourth Amendment against Reid and Pierce; (3) false arrest/imprisonment under New York law against Reid, Pierce, and Greenhope; (4) general negligence under New York law against Reid, Pierce, and Greenhope; and (5) negligent infliction of emotional distress under New York law against Reid, Pierce, and Greenhope.

Defendants assert four reasons why they should be granted summary judgment on all claims.  First, Croft's guilty plea is an absolute bar to all of her claims.  Second, the Greenhope employees are entitled to qualified immunity.  Third, the defendants were not the proximate cause of Croft's harm.  Fourth, the state law claims fail because Croft cannot prove third-party liability for false arrest under New York law and her remaining state law claims must be dismissed, as they sound only in false arrest.

8

It is unnecessary to reach the parties' arguments regarding the plaintiff's right to amend her pleading on the eve of summary judgment practice.  Even if the amendment were permitted, the defendants have shown that they are entitled to summary judgment.

Section 1983 Claims

To sustain a § 1983 claim, the plaintiff must show that he was "deprived of rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by a person acting under color of state law.  Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (citation omitted).  That an individual defendant committed a constitutional violation is not sufficient, however, to establish liability under § 1983 because individuals are further protected by the doctrine of qualified immunity.  As the Supreme Court recently reiterated,

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "We do not require a case directly on point" before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  al-Kidd, 131 S. Ct. at 2083.

9

Stanton v. Sims, 132 S. Ct. 3, 4-5 (2013) (per curiam).  A court may resolve the qualified immunity question first, but it is often appropriate to begin by determining whether an official has violated a constitutional right.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  A private actor subject to § 1983 liability can enjoy qualified immunity if such immunity is consistent with "general principles of tort immunities and defenses applicable at common law, and the reasons [the Supreme Court has] afforded protection from suit under § 1983."  Filarsky v. Delia, 132 S. Ct. 1657, 1662 (2012) (citation omitted).

Here, Croft brings two § 1983 claims, under the Fourth and First Amendment respectively.  Her Fourth Amendment claim is that of false arrest, and her First Amendment claim is that of retaliation for protected conduct.

1. False Arrest, under the Fourth Amendment

In assessing Fourth Amendment claims of false arrest brought under § 1983, courts look to the law of the state in which the arrest occurred.  Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007).  "In New York, the tort of false arrest is synonymous with that of false imprisonment."  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  Under New York law, an action for false imprisonment requires that the plaintiff show that "(1)

10

the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Ackerson v. White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (quoting Broughton v. State of New York, 37 N.Y.2d 451, 456 (1975)). "A favorable termination of the proceedings is not an element of this tort." Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted).

Under New York law, "[o]ne who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest." Dunn v. City of Syracuse, 443 N.Y.S.2d 463, 464 (1st Dep't 1981); see also Vernes v. Phillips, 266 N.Y. 298 (1935).

> For false imprisonment liability to attach to one who causes or directs an arrest or imprisonment in New York, the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition.

Curley v. AMR Corp, 153 F.3d 5, 13-14 (2d Cir. 1998) (citation omitted); accord Petrychenko v. Solovey, 952 N.Y.S.2d 575, 578 (2d Dep't 2012); Krzyzak v. Schaefer, 860 N.Y.S.2d 252, 253 (3d Dep't 2008); Breytman v. Olinville Realty, LLC, 850 N.Y.S.2d 9, 11 (1st Dep't 2007).

Where probable cause for the arrest exists, an arrest by a law enforcement officer is privileged. Gonzalez v. City of

11

Schenectady, 728 F.3d 149, 155 (2d Cir. 2013).  If "following the arrest, the plaintiff was convicted of the charges against him, that conviction normally would be conclusive evidence of probable cause."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  The same is true if the conviction is obtained through a guilty plea.  Maietta v. Artuz, 84 F.3d 100, 102 n.1 (2d Cir. 1996).

In Heck v. Humphrey, the Supreme Court stated "[w]e think that the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."  512 U.S. 477, 486 (1994).  Applying this principle, the Supreme Court imposed a rule barring a § 1983 claim when the success of a § 1983 claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id. at 486-87.  The Court of Appeals has held that the Heck bar does not apply, however, when federal habeas relief is unavailable to the plaintiff.  Poventud v. City of New York, 715

12

F.3d 57, 62 (2d Cir. 2013) (allowing a § 1983 suit to proceed where the plaintiff was not "in custody" and therefore unable to seek federal habeas relief).

Croft's false arrest claim under § 1983 is barred because Croft pled guilty to having violated her parole. The conditions of her parole required that Croft complete the Greenhope program. It is undisputed that she did not do so. Charge #2 related to this condition. Croft pled guilty to this charge, thus conclusively establishing that probable cause existed to arrest her for violating her parole. As a result, Croft's arrest is privileged, and no claim for false arrest may lie.

Croft's only response is to assert that her guilty plea is not binding because the plea is invalid. She asserts that the guilty plea was the product of undue influence by the Parole Judge, when he told her that she was "gonna have to plead guilty" to Charge #2. Croft's argument is foreclosed, however, by the principle recognized in Heck. Because her guilty plea is conclusive evidence of probable cause for her arrest, before Croft can pursue her § 1983 claim for false arrest, her conviction must be vacated.

Croft attempts to avoid this conclusion by invoking Poventud and arguing that habeas relief was not available to her when she filed this lawsuit since she was not incarcerated and was free to live at home, and therefore, she argues, was not "in custody."

13

Croft, however, was on parole when she filed this action in May of 2013, and will apparently remain on parole until at least 2014. Since Croft's conviction remained in place and she had the ability to challenge it either directly or collaterally, she could not indirectly challenge its validity by filing a § 1983 action. See Jones v. Cunningham, 371 U.S. 236, 242-43 (1963) (holding that a petitioner on parole satisfies the "in custody" requirement to seek federal habeas relief).

Because Croft's guilty plea is dispositive of her false arrest claim under § 1983, it is unnecessary to reach defendants' qualified immunity defense or their challenge to proximate causation. Summary judgment is granted in favor of defendants with respect to Croft's false arrest claim under § 1983.

2. Retaliation, in violation of First Amendment

The elements of a First Amendment retaliation claim have been described in varying ways, depending on the particular context of the case. Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011). Croft invokes the circumstance involving a private citizen plaintiff who claims retaliation by a public official on account of protected speech. In this context, to state a First Amendment retaliation claim, a plaintiff must plead that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of

14

that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (citation omitted).

The existence of probable cause for the retaliatory conduct will defeat a First Amendment retaliation claim premised on allegations that the defendants arrested or prosecuted a plaintiff "out of a retaliatory motive, in an attempt to silence her."  Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012).  If an officer had probable cause, a court "will not examine the officer's underlying motive in arresting and charging the plaintiff."  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 120 (2d Cir. 1995).  Similarly, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government."  Fabrikant, 691 F.3d at 215 (citation omitted); see also Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) ("[B]ecause there was probable cause in this case to believe [the plaintiff] violated the . . . statute, we will not examine the defendants' motives in reporting [plaintiff's] actions to the police for prosecution.").  Cf. Reichle v. Howards, 132 S. Ct. 2088, 2094 (2012) ("Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a

15

retaliatory arrest that is otherwise supported by probable cause. This Court has never held that there is such a right.").

Here, it has already been determined that Croft's guilty plea is conclusive evidence of probable cause to arrest her for violating her parole. Accordingly, the Court will not examine defendants' motives for reporting Croft to the Parole Office. Summary judgment is granted in favor of defendants with respect to Croft's First Amendment retaliation claim.

State Law Claims

Because the § 1983 claim for false arrest contains each of the elements of the tort of false arrest under New York common law, Croft's guilty plea also resolves this claim. Defendants contend that the remaining state law claims, that of general negligence and negligent infliction of emotion distress, must be dismissed because these claims must be analyzed under the framework of false arrest. The defendants are correct.

The First Department recently held that negligence claims may not be pleaded in an effort to avoid a dismissal of a false arrest claim. Ferguson v. Dollar Rent A Car, Inc., 959 N.Y.S.2d 55, 56 (1st Dep't 2013). In Ferguson, the plaintiff had sued a car rental company for renting out a vehicle that had been registered as stolen and for failing to inform the police that the car had been recovered. The plaintiff had been arrested

16

while driving the vehicle, and brought suit against the rental company, alleging false arrest and general negligence. Id. The trial court granted summary judgment to the defendants. On appeal, the plaintiff attempted to argue that "the gravamen of her complaint is negligence." Id. The First Department rejected this argument:

> However, the damages plaintiff seeks arose from her arrest and detention, and she may not recover under general negligence principles. Her recovery must be determined by established rules defining the torts of false arrest and imprisonment and malicious prosecution, rules which permit damages only under circumstances in which the law regards the imprisonment or prosecution as improper and unjustified.

Id. (citation omitted).

Here, too, Croft may not seek to recover under general negligence principles. The gravamen of her general negligence claim and her negligent infliction of emotion distress claim is that Greenhope's employees acted unreasonably when they caused her arrest by reporting Croft to the Parole Office. As in Ferguson, the damages that Croft seeks arise solely from her arrest and detention. Accordingly, these remaining state law claims are barred. Summary judgment is granted in favor of defendants with respect to Croft's state law claims.

Rule 56(d) Request

One final matter must be addressed. On November 8, Croft

17

sought to oppose summary judgment on the ground that she required additional discovery pursuant to Rule 56(d).  Rule 56(d) prescribes the procedures that a party opposing summary judgment must follow in order to assert that "it cannot present facts essential to justify its opposition."[1]  Under the rule, a party requesting further discovery in order to defeat a motion for summary judgment must file "an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004).

The request for additional discovery pursuant to Rule 56(d) is denied.  Croft's guilty plea is dispositive of all her claims -- false arrest, retaliation, and otherwise -- for the reasons explained above.  None of the information sought in her request for additional discovery raises a genuine issue of material fact as to the existence or validity of this guilty plea.  Thus it provides no basis for delaying the grant of summary judgment to defendants.

---

[1] As part of the 2010 amendments to Rule 56, discussion of the procedure for seeking additional discovery in response to a motion for summary judgment was moved from subdivision (f) to subdivision (d).  The Advisory Committee Notes state that the new subdivision (d) "carries forward without substantial changes the provisions of former subdivision (f)."

CONCLUSION

Defendants' October 22, 2013 motion for summary judgment is granted.  The Clerk of Court shall close the case.


Dated:    New York, New York
          December 17, 2013

```
                              _____
                                    DENISE COTE
                              United States District Judge
```